J-A13015-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: R.H., MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.H., FATHER | No. 1922 WDA 2014 |

Appeal from the Order entered November 22, 2014
in the Court of Common Pleas of Allegheny County
Civil Division, at No(s): TPR 17 of 2014

| | |
|---|---|
| IN RE: L.H., MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.H., FATHER | No. 1923 WDA 2014 |

Appeal from the Order November 22, 2014
in the Court of Common Pleas of Allegheny County
Civil Division, at No(s): TPR 19 of 2014

BEFORE:  PANELLA, J., SHOGAN, J., and OTT, J.

MEMORANDUM BY PANELLA, J.:                              **FILED JULY 27, 2015**

J.H. ("Father") appeals from the orders entered on November 22, 2014, in the Court of Common Pleas of Allegheny County, involuntarily terminating his parental rights to his female child, L.H., born in April 2006, and to his female child, R.H., born in September 2007, (collectively "the Children"), pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b).[1]

We affirm.

---

[1] L.H. is the mother ("Mother") of L.H. and R.H.  Mother filed consolidated concurrent appeals at 1903 WDA 2014, 1904 WDA 2014, and 1905 WDA 2014, in regard to the involuntary termination of her parental rights to L.H. R.H., and K.B.  Her appeals are the subject of a separate memorandum.

The record reveals the relevant factual and procedural history, as follows. Father is the natural father of L.H. and R.H. The Allegheny County Office of Children, Youth, and Families ("CYF") became familiar with the family in 2011, when Mother was involved in an accident and became homeless. CYF assisted the family with intervention and services, and the case was closed on October 19, 2011. CYF once again became involved with the family on January 2, 2012. Mother again admitted to her history of drug and alcohol abuse and mental health concerns, and Mother reported that she had been charged with vehicular homicide because of the car accident in 2011. Mother offered a friend, L.P., as a potential placement resource for the Children.

In March 27, 2012, CYF again became involved with the family due to concerns regarding the placement of the Children with Maternal Grandmother. Mother had previously alleged that Maternal Grandmother had been abusive to Mother as a child, and Mother was also struggling with her ongoing drug and alcohol addiction and her mental health issues. CYF was unable to reach Mother for eleven days, and, on March 30, 2012, the Children were removed from Maternal Grandmother's home by CYF, and placed in foster care.

At the time of the Children's removal, Father was unable to provide housing for the Children. Upon completion of its initial assessment of Father, CYF had concerns about Father's criminal background, his substance abuse, and his lack of housing. Following the assessment, Father agreed to

complete random drug and alcohol screens, and he began visiting the Children at Gwen's Girls.

On April 27, 2012, CYF established a Family Service Plan ("FSP) for Father, which included goals to achieve and maintain recovery from substance abuse and to stabilize mental health problems. Additional goals were added on October 25, 2013, April 23, 2013, October 17, 2013, and April 4, 2014. Since the establishment of Father's FSP goals, he has failed to make adequate progress in dealing with his drug and alcohol goals and his mental health goals. Father took no steps to work on his drug and alcohol goals until 2013. To assist Father in addressing his drug and alcohol issues, CYF referred Father to Highland House treatment facilities and Gateway. On March 1, 2013, 11 months after agreeing to his drug and alcohol goal, Father completed an intake evaluation at Highland House. However, after completing only one session, Father was discharged on March 15, 2013 for noncompliance.

On October 14, 2013, Father began alcohol treatment at Gateway. Father completed the program on February 24, 2014, and was discharged with an instruction to continue that program in an aftercare program. Father did not participate in any aftercare program. Father also has a history of failing to attend random drug and alcohol screens.

With regard to Father's mental health treatment goals, a CYF caseworker testified that Father received mental health medications through the Lawrence County Human Services Center and completed a psychological

evaluation in September 2012. The caseworker further testified that, although Father continued to take his prescribed mental health medications, Father did not meet his mental health goal because he did not participate in active therapeutic counseling.

Dr. Neil Rosenblum, a psychologist, offered testimony and evaluation reports indicating the Father has continuing problems maintaining sobriety, as well as continuing problems committing to mental health treatment. At the time of Father's individual evaluation of June 26, 2012 and his interactional on July 30, 2012, Dr. Rosenblum noted that Father admitted to alcohol and smoking marijuana. Dr. Rosenblum also testified that Father admitted to drinking heavily in the military and having a prior DUI conviction.

In his first evaluation report, Dr. Rosenblum opined that, based on Father's history, Father needed to have a commitment to total sobriety and abstain from all drugs and alcohol. Dr. Rosenblum also noted that Father was not addressing his mental health issues. At the time of Father's March 20, 2013 re-evaluation, Dr. Rosenblum wrote that there was no real change, and opined that Father was not fully committed to recovery. Dr. Rosenblum also testified that, at an April 15, 2014 individual and interactional evaluation, Father admitted that he had lied to Dr. Rosenblum at the previous evaluation, and that he had relapsed in February 2013. Dr. Rosenblum expressed significant concern with Father's decision-making, his commitment to recovery, and his failure to make use of the opportunities he

was given to progress with his FSP goals. At the time of the April 2014 evaluation, Dr. Rosenblum concluded that Father had not achieved the stability needed to care for the Children. However, Father had consistently visited the Children.

Dr. Rosenblum also conducted interactional evaluations of Father with the Children. Dr. Rosenblum found that the Children have a positive bond and a "nice relationship" with Father, but do not rely on him as someone who can meet their daily needs. Thus, Dr. Rosenblum determined that the Children do not have a secure relationship with Father.

On February 7, 2014, CYF filed Petitions for Involuntary Termination of Parental Rights of Father to the Children. The orphans' court held hearings on July 11, 2014 and October 10, 2014. On November 22, 2014, the orphans' court entered orders terminating Father's parental rights to the Children.

On November 26, 2014, Father filed timely notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Father's appeals at 1922 WDA 2014 and 1923 WDA 2014 were consolidated *sua sponte* by this Court on December 9, 2014.

Our well-settled standard of review is as follows.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law

or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Father's parental rights pursuant to Sections 2511(a)(2) and (b), which provide as follows.

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*\*\*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2) and (b).

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not

limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. ***In re A.L.D.*** 797 A.2d 326, 337 (Pa. Super. 2002).

Our Supreme Court set forth our inquiry under section 2511(a)(2) as follows.

> As stated above, § 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." If and only if grounds for termination are established under subsection (a), does a court consider "the developmental, physical and emotional needs and welfare of the child" under § 2511(b).
>
> This Court has addressed incapacity sufficient for termination under § 2511(a)(2):
>
> > A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.
>
> ***In re Adoption of J.J.***, 511 Pa. 590, 515 A.2d 883, 891 (Pa. 1986) (quoting ***In re: William L.***, 477 Pa. 322, 383 A.2d 1228, 1239 (Pa. 1978)).

***In re Adoption of S.P.***, 47 A.3d 817, 827 (2012).

This Court has stated that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities.

*See In re A.L.D.* 797 A.2d at 337. A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *See id*. at 340.

The orphans' court explained its decision to terminate Father's parental rights under Section 2511(a)(2) as follows.

> Grounds to terminate [Father's] parental rights to L.H. and R.H. exist pursuant to 2511(a)(2). [Father's] long history pf drug and alcohol abuse and mental health problems, his long delay in pursuing treatment to address these problems, and his lack of commitment to the aftercare necessary to support him all demonstrate a repeated and continued incapacity to function as a full-time parent to L.H. and R.H. [Father'sJ conduct has caused L.H. and R.H. to be without essential parental care and control. [Father's] lack of follow-through with aftercare treatment and his lack of understanding of the need for continued treatment justify the conclusion that his incapacity cannot and will not be remedied.

Orphans' Court Opinion, at 9.

There is ample, competent, clear and convincing evidence in the record to support the orphans' court's determination that Father has not demonstrated any ability to remedy the circumstances which led to the Children's placement, nor is there any indication that he could remedy such circumstances in the foreseeable future, even with continued services in place. After a careful review of the record, we find that the orphans' court aptly discussed the evidence against the requirements of Section 2511(a)(2). We will not impose our own credibility determinations and re-weigh the evidence. We must defer to the orphans' court's determination,

as the factual findings are supported by the record, and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *See In re Adoption of S.P.*, 47 A.3d at 826-27.

After we determine that the requirements of Section 2511(a) are satisfied, we proceed to review whether the requirements of section 2511(b) are satisfied. *See In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). This Court has stated that the focus in terminating parental rights under Section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *See id*. at 1008.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d at 267.

We have stated that, in conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super.

2010). This Court has observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *See In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008). It is appropriate to consider a child's bond with her foster parent. *See In re: T.S.M.*, 71 A.3d at 268.

Dr. Rosenblum conducted interactional evaluations of Father with the Children in 2012, 2013, and 2014. Dr. Rosenblum noted that the Children have a positive bond and a "nice relationship" with Father. However, Dr. Rosenblum found that the Children view Father as a "visitation person"—not as a custodial caregiver. The Children do not rely on Father as someone who can meet their daily needs, and they have never relied on him for this. Dr. Rosenblum opined in his April 2014 report that the Children do not have a secure relationship with Father.

Dr. Rosenblum conducted interactional evaluations of the Children with Foster Mother in 2013 and 2014. Foster Mother has known the Children since they were born, and they have a strong bond with her. Dr. Rosenblum found that Foster Mother focuses on the Children's needs and has earned their trust and confidence. Dr. Rosenblum opined that Foster Mother will make good decisions for the Children. The CYF caseworker observed the Children with Foster Mother and testified that the Children are comfortable, secure, and happy in their foster home.

While Father may claim to love the Children, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). A child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id*. at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004).

We find that there was competent evidence to support the court's decision that termination of Father's parental rights best serves the Children's developmental, physical, and emotional needs and welfare. Thus, we discern no abuse of discretion or error of law as to the termination of Father's parental rights pursuant to section 2511(b).

Accordingly, we affirm the orphans' court's orders terminating Father's parental rights to the Children pursuant to section 2511(a)(2) and (b) of the Adoption Act.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/27/2015